## In re HUNTER ARMS CO.

### In re HODGES et al.

#### (Circuit Court of Appeals, Second Circuit. April 11, 1916.)

#### No. 240.

1. CORPORATIONS ⊙519(3)—CORPORATE FUNDS—LOANS.

Where one of three interlocking corporations, which received moneys raised from the sale of the bonds of the second company, loaned them to the third corporation, evidence *held* insufficient to show that the loan was authorized or ratified by the second company.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2085, 2089; Dec. Dig. ⊙519(3).]

2. BANKRUPTCY ⊙303(3)—EVIDENCE—BONDS.

Where a bankrupt corporation, whose directors interlocked with a second company, which sold bonds, received the proceeds, evidence showing that the bankrupt corporation had with authority lent the proceeds to another corporation, which was accepted as the debtor, must be clear and convincing, to free the bankrupt from liability.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 462; Dec. Dig. ⊙303(3).]

Appeal from the District Court of the United States for the Northern District of New York.

In the matter of the bankruptcy of the Hunter Arms Company. From an order (226 Fed. 866) confirming the report of the master allowing a claim, Frank B. Hodges and others, trustees, appeal. Affirmed.

The order appealed from confirmed the report of a special master, proving and allowing the claim of Arvin L. Rice, as trustee in bankruptcy of Hunter Bros. Paper Company against the bankrupt estate of Hunter Arms Company, for the sum of $59,000, with interest. For brevity, the two above-named corporations will be called

⊙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the Paper Co. and the Arms Co., and a third, the Battle Island Paper Company, will be called the Island Co.

Nelson P. Bonney, of Norwich, N. Y., and William A. Mackenzie, of Syracuse, N. Y. (J. P. Hill, of Norwich, N. Y., of counsel), for appellants.

E. J. Mizen, of Oswego, N. Y., for appellee.

Before WARD, and ROGERS, Circuit Judges, and MAYER, District Judge.

MAYER, District Judge. There were three corporations, all now bankrupt, and all exploited by six brothers, named Hunter.

Arms Co. made firearms, and had a factory and office at Fulton, N. Y.; Island Co. made pulp, and had a plant at Battle Island, near Fulton; Paper Co. was incorporated in 1905, after the two other corporations had been in existence for some time. Shortly after incorporation, Paper Co. bought for $1,700 some vacant land at Battle Island. The authorized common capital stock of Paper Co. was $250,000, but only $2,500 was issued. Paper Co. executed a trust mortgage on the $1,700 vacant premises to secure an issue of bonds up to $300,000, the proceeds from the sale of these bonds to be used for the erection of a paper mill on the mortgaged premises.

The Hunter brothers were majority stockholders in Arms Co., sole stockholders in Paper Co., and held stock in Island Co. They were sole directors of Arms Co., and until 1913, when one of them dropped out, were also sole directors of Paper Co. They appear, also, to have been directors of Island Co. They were likewise the officers of all three companies, Thomas Hunter being treasurer of Paper Co. and president of Arms Co. and Island Co. As might be expected, these Hunter brothers treated these corporations as if they were their personal property, and thus frequently acted informally, with the natural result of leaving in doubt the effect of their conduct.

Between February and August, 1906, Thomas Hunter sold 82 bonds of Paper Co. for $82,000. Fifty-nine of these bonds are now outstanding. Paper Co. neither kept books nor had a bank account. Without authority and without power, even though his board of directors had so authorized, Thomas Hunter paid the proceeds of these bonds as fast as received into the bank accounts and to the credit of Arms Co., and Arms Co. in its books charged itself with these moneys and credited itself with various sums paid out by it for Paper Co.

The proceeds of the bonds never went to build a mill, and no mill was ever built; but, on the contrary, these proceeds were used by Arms Co., mixed with its own funds, and treated as its own, and there cannot be any doubt that Arms Co. became responsible for this money to Paper Co. It is unnecessary to determine whether, by virtue of the transactions, Arms Co. became a trustee or merely a debtor of Paper Co. At this time and thereafter there was an open and general running account between Arms Co. and Island Co., and Island Co. was the debtor of Arms Co. to the extent of $100,000 or more.

[1, 2] At a meeting at which it is claimed the affairs of all three com-

panies were discussed, it is said that Thomas Hunter advised loaning $75,000 of the proceeds of the bonds to Island Co. One of the others present approved this suggestion, but the remainder made no comment. No formal resolution was prepared, offered, or voted on, and it is now urged that Island Co., instead of Arms Co., became the debtor of Paper Co. by virtue of this alleged agreement thus loosely made. In other words, it is contended that Arms Co. was relieved by an agreement which in effect amounted to a novation.

Irrespective of questions of power, the proof is inconclusive to establish any such understanding. After the $82,000 of Paper Co. had gone into the treasury of Arms Co., the latter on December 31, 1906, made an entry on its ledger account with the Paper Co., charging off $75,000 against Paper Co. The entry read: "1906, Dec. 31. Note given, $75,000.00."

On the same day Arms Co. gave Island Co. on Arms Co.'s ledger account with Island Co., credit for having paid to it $75,000. That entry read: "1906, Dec. 31. Note given, $75,000.00." On December 31, 1906, Island Co. owed Arms Co. on open account, $190,362.95, and the sums thus loaned by Arms Co. to Island Co. were not earmarked in any manner, and none of them can be identified as Paper Co. money. No note was ever given, not a piece of paper money existed to identify the alleged transaction, and no money ever passed.

In the books of Island Co. there is not any entry contemporaneously made, nor, indeed, until June 30, 1909—2½ years later—when Island Co. charged itself with having borrowed $75,000 of Paper Co., the entry reading: "1909, June 30. Transfer of account from Hunter Arms Co., $75,000.00."

Throughout this period Arms Co. and Island Co. had many transactions, and after the alleged loan Arms Co. nevertheless paid interest on the Paper Co. bonds on 11 separate occasions from January, 1907, to January, 1913, to an amount aggregating $21,350. In brief, Arms Co. has fallen far short of proving that it was relieved or released of its debt to Paper Co., and, on the contrary, the evidence leads affirmatively to the contrary conclusion.

The foregoing sufficiently outlines the transactions, the details of which are set forth in an exhaustive and careful review in Judge Ray's opinion. Without considering any questions as to the power of the directors of Paper Co., nor the application of section 23 of the New York Stock Corporation Law, it is enough to state that, where the money of investing bondholders has been used and dealt with as is shown in this record, any agreement in derogation of their rights must be established by clear and convincing proof, and must, of course, be lawful.

As the fact (i. e., the agreement to substitute Island Co. as the debtor, instead of Arms Co.) has not been proved, the obligation remains as Thomas Hunter originally placed it, and as Arms Co. originally accepted it, and it becomes unnecessary to consider questions of law which might have arisen, had the proof justified the conclusion that the agreement was made.

The order is affirmed, with costs.